*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1625**

Peter Gerard Lonergan,
Appellant,

vs.

Emily Johnson Piper, Commissioner of Human Services,
Respondent.

**Filed February 22, 2016
Affirmed
Larkin, Judge**

Dakota County District Court
File No. 19-P1-06-008179

David A. Jaehne, West St. Paul, Minnesota (for appellant)

Lori Swanson, Attorney General, Stephanie Hilstrom, Assistant Attorney General, St. Paul,
Minnesota; and

James C. Backstrom, Dakota County Attorney, Donald E. Bruce, Assistant County
Attorney, Hastings, Minnesota (for respondent)

Considered and decided by Larkin, Presiding Judge; Rodenberg, Judge; and
Chutich, Judge.

UNPUBLISHED OPINION

**LARKIN**, Judge

Appellant challenges the judicial appeal panel's order dismissing and denying his petition for discharge or provisional discharge from civil commitment as a sexually dangerous person. Because appellant failed to introduce competent evidence suggesting that he meets the statutory criteria for that relief, we affirm.

## FACTS

Appellant Peter Lonergan was indeterminately committed as a sexually dangerous person in May 2009 and has been placed in the Minnesota Sex Offender Program (the MSOP) in Moose Lake. In May 2013, Lonergan petitioned the special review board for a transfer to Community Preparation Services (CPS), a provisional discharge from civil commitment, or a full discharge. The special review board conducted a hearing and recommended denying Lonergan's requests. As to Lonergan's request for a provisional discharge, the special review board stated:

> Mr. Lonergan's current course of treatment and present mental status require continued commitment and supervision at his current treatment setting. Furthermore, there has been no competent Provisional Discharge Plan presented, and any provisional discharge at this time would present a substantial risk to the public.

Lonergan requested reconsideration by the judicial appeal panel, but withdrew his request for a transfer to CPS. The judicial appeal panel appointed Thomas Alberg, Ph.D., to examine Lonergan. The judicial appeal panel held a hearing and received 25 stipulated exhibits, including Dr. Alberg's report regarding his examination of Lonergan. During

Lonergan's testimony, his attorney asked him about treatment options outside the MSOP and where he would live if he was accepted into another treatment program. The assistant attorney general objected to that line of questioning, arguing that no evidence regarding a provisional discharge plan had been presented to the special review board. The judicial appeal panel sustained the objection, stating, "There being no evidence that [a provisional discharge plan] was presented to the special review board, the statute does prohibit us from considering this."

After Lonergan presented his case, respondent Commissioner of Human Services moved to dismiss Lonergan's petition under Minn. R. Civ. P. 41.02(b) and Minn. Stat. § 253D.28, subd. 2(d)-(e) (Supp. 2015). The judicial appeal panel granted the commissioner's motion and denied Lonergan's request for full or provisional discharge, explaining that:

> Viewing the evidence in the light most favorable to [Lonergan], he has failed to provide any competent evidence that there is no longer a need for treatment and supervision in a secure facility. Additionally, [Lonergan] has not presented any competent evidence that he has a provisional discharge plan with provisions that will provide a reasonable degree of protection to the public and enable him to adjust successfully to the community.

Lonergan appeals.

## D E C I S I O N

Lonergan challenges the judicial appeal panel's dismissal and denial of his petition for discharge or provisional discharge. "When a judicial appeal panel dismisses a civil-

3

commitment discharge petition under Minn. R. Civ. P. 41.02(b), the standard of review is de novo." *Larson v. Jesson*, 847 N.W.2d 531, 532-33 (Minn. App. 2014).

A person who is committed as a sexually dangerous person may petition the special review board for a discharge or provisional discharge from commitment. Minn. Stat. § 253D.27, subd. 2 (2014). If the special review board recommends denying the petition, the person may ask the judicial appeal panel to reconsider the special review board's recommendation. *Larson*, 847 N.W.2d at 534. The petitioner "bears the burden of going forward with the evidence, which means presenting a prima facie case with competent evidence to show that the person is entitled to the requested relief." Minn. Stat. § 253D.28, subd. 2(d). "If the petitioning party has met this burden, the party opposing discharge or provisional discharge bears the burden of proof by clear and convincing evidence that the discharge or provisional discharge should be denied." *Id*.

"A person who is committed as a sexually dangerous person . . . shall not be provisionally discharged unless the committed person is capable of making an acceptable adjustment to open society." Minn. Stat. § 253D.30, subd. 1(a) (2014). In making that determination, the following factors must be considered:

> (1) whether the committed person's course of treatment and present mental status indicate there is no longer a need for treatment and supervision in the committed person's current treatment setting; and
> (2) whether the conditions of the provisional discharge plan will provide a reasonable degree of protection to the public and will enable the committed person to adjust successfully to the community.

*Id.*, subd. 1(b) (2014).

"After the [petitioner] has completed the presentation of evidence, the commissioner may move to dismiss the petition under Minn. R. Civ. P. 41.02(b)."[1] *Larson*, 847 N.W.2d at 535. When considering a rule 41.02(b) dismissal motion, the judicial appeal panel "may not weigh the evidence or make credibility determinations" and must "view the evidence . . . in a light most favorable to the committed person." *Id.* (quotations omitted). Dismissal under Minn. R. Civ. P. 41.02(b) may be appropriate if the committed person does not meet his burden of production. *Id.* If a petitioner fails to produce evidence that would entitle him to a provisional discharge, he also fails to produce evidence that would entitle him to a complete discharge. *See* Minn. Stat. § 253D.31 (2014) (setting forth the criteria for discharge from commitment as a sexually dangerous person); *Larson*, 847 N.W.2d at 535 (noting that "the criteria for a provisional discharge are more lenient than the criteria for a discharge").

"[A] provisional discharge plan is a necessary step before the judicial appeal panel could even begin to consider a provisional discharge." *Larson*, 847 N.W.2d at 536. "A provisional discharge plan shall be developed, implemented, and monitored by the executive director [of MSOP] in conjunction with the committed person and other appropriate persons." Minn. Stat. § 253D.30, subd. 2 (2014). Lonergan argues that he "may or may not have presented a provisional discharge plan to the [special review] board, but he tried to do so for the judicial appeal panel." But Lonergan's proffer to the judicial

---

[1] The relevant portion of the rule provides, "After the plaintiff has completed the presentation of evidence, the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law, the plaintiff has shown no right to relief." Minn. R. Civ. P. 41.02(b).

appeal panel did not suggest that he had a provisional discharge plan that complied with the statutory requirements. Lonergan told the panel, "There was not an approved plan by the MSOP but we did have a prevention plan."

The judicial appeal panel properly refused Lonergan's evidence regarding his purported provisional discharge plan because he did not present that evidence to the special review board and because the judicial appeal panel "may not grant a transfer or provisional discharge on terms or conditions that were not presented to the special review board." Minn. Stat. § 253D.28, subd. 3 (2014). Lonergan argues that the judicial appeal panel nonetheless should have considered his plan because section 253D.28 is inconsistent with this court's remand instructions in *Coker v. Ludeman*, 775 N.W.2d 660 (Minn. App. 2009), *review dismissed* (Minn. Feb. 24, 2010).

In *Coker*, this court determined that the judicial appeal panel imposed too high of a burden on the petitioner and therefore reversed and remanded the case for a new hearing. 775 N.W.2d at 665. We stated that, on remand, "the appeal panel may consider all evidence relevant to the relief requested and is not limited to the record from the previous proceeding and/or hearing before the appeal panel." *Id.* Lonergan quotes that language and argues that the judicial appeal panel in this case should have accepted and considered evidence regarding his provisional discharge plan, even if it was not presented to the special review board.

Assuming that the relevant language in *Coker* could apply in this case, we reject Lonergan's argument. The language in *Coker* states that, on remand in that case, that appeal panel "*may*" consider relevant evidence not previously presented in that proceeding.

6

*Id.* (emphasis added). The *Coker* remand language did not require consideration of previously unpresented evidence. Further, *Coker* was decided under an earlier statute regarding judicial appeal panels. *See id.* at 660 (applying 2008 version of Minn. Stat. § 253B.19, subd. 2(d)). And the current statute states that "[t]he judicial appeal panel may not grant a transfer or provisional discharge on terms or conditions that were not presented to the special review board." Minn. Stat. § 253D.28, subd. 3. Moreover, because *Coker* did not address the impact of the predecessor statute on its remand instructions, *Coker* is not binding here. *See Skelly Oil Co. v. Comm'r of Taxation*, 269 Minn. 351, 371, 131 N.W.2d 632, 645 (1964) (stating that "the language used in an opinion must be read in light of the issues presented" (quotation omitted)).

Because section 253D.28, subdivision 3, prohibits the judicial appeal panel from granting a provisional discharge based on terms or conditions that were not presented to the special review board, the judicial appeal panel did not err by refusing to consider Lonergan's proffered evidence of his purported provisional discharge plan. *See* Minn. Stat. § 253D.28, subd. 3. And without a provisional discharge plan, the judicial appeal panel could not conclude that Lonergan is capable of making an acceptable adjustment to open society or grant a provisional discharge. *See* Minn. Stat. § 253D.30, subd. 1 (2014).

Lonergan also had the burden to produce competent evidence that he no longer needs treatment and supervision in his current treatment setting. *See* Minn. Stat. §§ 253D.28, subd. 2(d); .30, subd. 1(b). He suggests that Dr. Alberg's testimony satisfies his burden of production, relying on Dr. Alberg's opinion that Lonergan is a "moderate" risk based on one assessment (Static-99R) and is in the "highest risk category" with a

"recidivism rate of 100 percent" based on another assessment (SORAG). Dr. Alberg opined that the first assessment "may be more realistic," but he noted that the result was "still a moderate risk." Lonergan asserts that he "needs a high risk to be committed," but he does not cite authority to support that assertion. Regardless, the fact that Lonergan was deemed a "moderate risk" under one assessment is not evidence that he no longer needs treatment and supervision in his current treatment setting.

Lonergan also notes that Dr. Alberg "wondered if there might be another place [Lonergan] could receive treatment." Dr. Alberg's testimony was as follows:

> Q. So one of the factors that you have to look at when considering provisional discharge is whether the individual's course of treatment and their present mental status indicate that there's no longer a need for treatment and supervision in the current treatment setting. Did you consider that factor at all in your analysis?
> A. Yeah. I think [Lonergan] still needs treatment.
> Q. And do you think he still needs treatment in the setting he's in?
> A. I mean I suppose there's a question is there another setting that he can receive the treatment in. Maybe but I'm not aware of what it would be.

That testimony does not indicate that Lonergan no longer needs treatment and supervision in his current treatment setting. In fact, Dr. Alberg testified that Lonergan was not appropriate for discharge or provisional discharge at the time of the hearing.

In sum, Lonergan did not produce competent evidence that he no longer needs treatment and supervision in his current treatment setting or that he has a provisional discharge plan that will provide a reasonable degree of protection to the public and enable him to adjust successfully to the community. Thus, there was no factual basis on which to

8

grant a provisional discharge, much less a discharge. *See Larson*, 847 N.W.2d at 535. The judicial appeal panel therefore did not err by dismissing and denying Lonergan's petition.

**Affirmed.**